UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

CAROL BROWN,                          )
                                      )
    *Plaintiff*,                      )
                                      )
v.                                    )          No. 3:23-cv-069-SKL
                                      )
COMMISSIONER OF SOCIAL SECURITY,      )
                                      )
    *Defendant*.                     )

## MEMORANDUM AND ORDER

Plaintiff Carol Brown ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c) seeking judicial review of the final decision of the Commissioner of Social Security

("Commissioner" or "Defendant") denying her supplemental security income ("SSI"). Each party

has filed a brief seeking judgment in their favor pursuant to Rule 5 of the Federal Rules of Civil

Procedure Supplemental Rules for Social Security [Doc. 15, Doc. 16, & Doc. 20].[1] Plaintiff also

filed a reply brief pursuant to Rule 8 of the Supplemental Rules [Doc. 21]. For the reasons stated

below: (1) Plaintiff's request for relief [Doc. 15 & Doc. 16] will be **DENIED**, and (2) the

Commissioner's request that his final decision denying benefits be affirmed [Doc. 20] will be

**GRANTED**.

## I.    ADMINISTRATIVE PROCEEDINGS

According to the administrative record [Doc. 7 ("Tr.")], Plaintiff filed her application for

SSI on September 27, 2019, alleging disability beginning September 27, 2019. Plaintiff's claim

---

[1] Plaintiff's filings are styled as a motion for judgment on the administrative record with a supporting memorandum, consistent with the practice prior to the effective date of the new Supplemental Rules.

was denied initially and on reconsideration at the agency level. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was conducted by telephone due to the COVID-19 pandemic on December 13, 2021.[2] On January 28, 2022, the ALJ found Plaintiff had not been under a disability as defined in the Social Security Act at any time from the date her application was filed through the date of the ALJ's decision.[3] The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action.

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was born January 5, 1988, making her 31 years old on the date the application was filed, which is considered a "younger person." 20 C.F.R. § 416.963(c). She has an 11th grade education and can communicate in English. She has past relevant work as a patient care worker, which is considered semiskilled in the Dictionary of Occupational Titles ("DOT") and performed at the medium exertional level.

### B. Medical Records

In her October 2019 Adult Disability Report, Plaintiff alleged disability due to diabetes, high blood pressure, anxiety, depression, cholesterol, colitis, and neuropathy (Tr. 235). While

---

[2] Plaintiff's administrative hearing was originally set in August 2021. After answering some brief questions from the ALJ during the August 2021 hearing, Plaintiff requested a postponement so she could seek counsel (Tr. 65-78). This hearing was also conducted by telephone (Tr. 67-68). The Court reviewed the transcript of this hearing as well as the subsequent hearing conducted December 13, 2021.

[3] SSI applicants are entitled to benefits beginning "the month following the month" the application is filed, regardless of the alleged onset of disability date. *See* 20 C.F.R. § 416.335.

2

there is no need to summarize all the medical records herein, the relevant records have been reviewed.

## C.    Hearing Testimony

At the telephonic hearing held December 13, 2021, Plaintiff and a vocational expert ("VE") testified. Plaintiff was represented by counsel at the hearing, the same attorney who represents her in the instant federal court case. The Court has carefully reviewed the transcript of the hearing (Tr. 32-64).

## III.    ELIGIBILITY AND THE ALJ'S FINDINGS

### A.    Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

3

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of their impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

**B.      The ALJ's Findings**

At step one of the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 27, 2019, Plaintiff's alleged onset of disability date and the date she filed her application for SSI. At step two, the ALJ found Plaintiff has the following severe impairments: diabetes mellitus, diabetic neuropathy, colitis, obesity, hypertension, depression, and anxiety.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ found Plaintiff had the residual functional

capacity ("RFC") to perform a reduced range of light work as defined in 20 C.F.R. § 416.967(b), with the following qualifications/restrictions:

- She can sit for six hours in an eight-hour workday.

- She can stand and/or walk for up to six hours in an eight-hour workday.

- She can only occasionally operate foot controls with her bilateral lower extremities.

- She can only occasionally climb ramps or stairs.

- She can only occasionally balance, stoop, kneel, crouch, or crawl.

- She can never climb ladders or scaffolds.

- She is limited to work tasks requiring gross visual acuity.

- She should have no more than occasional exposure to excessive vibration, unprotected heights, and unprotected or dangerous moving parts and equipment.

- She can understand, remember, and perform simple, routine work tasks and make decisions required for such tasks at a GED reasoning level of two or less.

- She will off task a cumulative total of less than 5% of an eight-hour workday, in addition to normal breaks.

(Tr. 23).

At step four, the ALJ found Plaintiff was not capable of performing her past relevant work as a patient care worker as generally or actually performed. At step five, however, the ALJ found there were occupations with jobs existing in substantial numbers in the national economy available to a person with Plaintiff's RFC, including laundry worker, housekeeper, and bakery worker (Tr. 26-27).

5

These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act at any time between the date her SSI application was filed and the date of the ALJ's decision.

## IV. ANALYSIS

Plaintiff argues the ALJ's decision should be reversed and this case remanded for an award of benefits, or in the alternative, remanded "for further consideration by a new Administrative Law Judge." [Doc. 16 at Page ID # 614]. Plaintiff asserts this relief is justified due to the following errors:

> A. The ALJ erred in failing to address or resolve significant inconsistencies between his RFC finding and the findings and opinions of Dr. Goewey, the consultative medical examiner in Ms. Brown's claim.
>
> B. The ALJ erred in failing to properly consider Ms. Brown's difficulties in affording and obtaining treatment for her conditions, and in further discrediting her for her lack of treatment while misrepresenting the evidence regarding her treatment.

[*Id.* at Page ID # 597-98].

## A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). The United States Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see*

6

*also McClanahan*, 474 F.3d at 833. Furthermore, the evidence must be "substantial" in light of the record as a whole, "taking into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

7

### B. The ALJ's Consideration of Dr. Goewey's Opinion

Plaintiff first argues the ALJ "erred in failing to address or resolve significant inconsistencies between his RFC finding and the findings and opinions of Dr. Goewey, the consultative medical examiner in Ms. Brown's claim." [Doc. 16 at Page ID # 604].

To assess a claimant's RFC, ALJs are required to consider all of the relevant evidence in a claimant's record, including the medical opinion evidence. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). Under 20 C.F.R. § 416.920c, an ALJ is required to consider multiple factors in evaluating medical opinion evidence, including (1) supportability, (2) consistency, (3) a source's relationship with the claimant, (4) specialization, and (5) other supporting or contradicting factors. This rule, which applies only to claims filed on or after March 27, 2017, "notably reduces the articulation standards required for ALJs in assessing medical source opinions" from the standards applicable to earlier-filed claims. *Gourley v. Comm'r of Soc. Sec.*, No. 2:21-CV-99, 2022 WL 4546376, at *5 (E.D. Tenn. Sept. 28, 2022) (cleaned up and citation omitted). "Supportability and consistency will be the most important factors, and usually the only factors the ALJ is required to articulate." *Jones v. Berryhill*, 392 F. Supp. 3d 831, 839 (M.D. Tenn. Aug. 2, 2019) (citation omitted). While the ALJ is required to consider the relevant factors, the ALJ is not required to explain their consideration in the written decision. 20 C.F.R. § 416.920c(b)(2).

The regulations explain that, regarding supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 920c(c)(1). Regarding consistency, the "more consistent a medical opinion(s) or prior administrative medical finding(s)

8

is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 920c(c)(2).

In this case, at step two of the five-step sequential process, the ALJ described Dr. Goewey's opinion as follows:

> Stephen Goewey, M.D., performed a consultative examination on December 3, 2020. The claimant reported a history of diabetes mellitus, burning in her hands and feet, and colitis. She currently takes no medications and denied medical treatment since 2019. The claimant [has] an 11th grade education and lives with a friend. Her blood pressure was 148/98 and her BMI was 42.3. She had 20/125 uncorrected vision and required frequent redirection, though her speech, hearing, and cognition were unremarkable. Examination noted reduced range of motion of the cervical spine, lumbar spine, shoulders, hips, and knees, decreased sensation in glove and stocking distributions, momentary completion of heel, toe, and tandem walking, and reduced squatting. The claimant appeared able to lift and carry up to twenty pounds occasionally, sit three to four hours, and stand and walk two to four hours over an eight-hour workday, with limited operation of foot controls (Exhibit 6F).

(Tr. 18). Later in the decision, the ALJ evaluated Dr. Goewey's opinion pursuant to 20 C.F.R. § 416.920c:

> I found the reconsideration DDS[4] medical consultant's assessment (Exhibit 3A) generally persuasive because it was generally consistent with the consultative examiner's opinion and was supported by the claimant's examination findings and subjective complaints in limiting her to a reduced range of light work, though I revised the wording somewhat for clarity. I found the consultative examiner's opinion (Exhibit 6F) partially persuasive because it was prepared by an acceptable medical source, was supported by a detailed examination of the claimant, and reached conclusions regarding the claimant's functional limitations that were generally consistent with the examination findings, though the proposed limitations were at times vaguely phrased, which limited their

---

[4] Disability Determination Services

9

usefulness in making this decision. I found the initial DDS medical consultant's opinion (Exhibit 1A) only slightly persuasive because it found the claimant capable of work at the medium exertional level, which is inconsistent with the other opinion evidence and did not have the benefit of reviewing the full record before me, which supported significantly different functional limitations. I again found the hearing testimony and other statements of the claimant and her roommate (e.g., Exhibits 3E; 5E; 8E) somewhat persuasive for the reasons discussed above.

(Tr. 24-25).

Later in the decision, the ALJ reiterated that he found Dr. Goewey's opinion "partially persuasive." (Tr. 25).

As the Commissioner points out, the primary difference between the assessed RFC and Dr. Goewey's opinion are the sitting/standing/walking requirements. Dr. Goewey opined Plaintiff could sit for three to four hours and stand/walk for two to four hours per eight-hour workday, while the ALJ found Plaintiff could perform six hours of each per eight-hour workday.

The ALJ cited evidence in support of his sitting/walking/standing functional assessments, including the opinion of the state agency consultant on reconsideration, Thomas Thrush, M.D. (Tr. 25; 100-04). Dr. Thrush found, as the ALJ did, that Plaintiff could sit for six hours in an eight-hour workday, and stand and/or walk for six hours in an eight-hour workday (Tr. 101). Dr. Thrush specifically noted Dr. Goewey's opinion was not persuasive or supported, citing Plaintiff's negative straight leg test results and her gait (Tr. 100). The ALJ also explained that he considered the initial DDS consultant's opinion, who found Plaintiff could perform the requirements of medium exertional-level work (Tr. 85). The ALJ found this opinion (which was offered before Dr. Goewey's consultative exam) did not adequately for Dr. Goewey's findings, the statements of Plaintiff's roommate, or Plaintiff's own subjective complaints (Tr. 25).

10

The ALJ expressly acknowledged Plaintiff's testimony "that she cannot sit, stand, or walk for more than five to fifteen minutes at one time," but the ALJ further noted Plaintiff's "medical records contain no mention of such complaints." (Tr. 24). Plaintiff does not cite to any records to contradict this finding nor does she otherwise argue this characterization of the medical record is incorrect. Contrary to Plaintiff's argument, the ALJ's discussion of this evidence (or lack thereof), does adequately address the "inconsistency" between Dr. Goewey's opinion and the ALJ's assessment of Plaintiff's RFC. The ALJ considered Dr. Goewey's opinion, and the ALJ's discussion of the other evidence in the record provides a reasonably clear explanation regarding why the ALJ did not adopt Dr. Goewey's sitting/standing/walking limitations. *See Dunlap v. Comm'r of Soc. Sec.*, No. 20-4179, 2021 WL 5371401, at *7 (6th Cir. Sept. 20, 2021) (holding that, "if the ALJ's 'RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted.'" (quoting SSR[5] 96-8p, 1996 WL 374184, at *7 (July 2, 1996))). In other words, the ALJ said enough to allow the Court "to trace the path" of his reasoning. Furthermore, as the Sixth Circuit has explained:

> The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c). Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

*Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009); *see also Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale.");

---

[5] Social Security Ruling

11

*Green v. Comm'r of Soc. Sec.*, No. 2:20-cv-232, 2020 WL 4877187, at *6 (S.D. Ohio Aug. 20, 2020) ("Although the ALJ assigned Mr. Spindler's opinion 'significant weight,' he was not required to adopt each of Mr. Spindler's proposed functional limitations."), *report and recommendation adopted*, 2020 WL 7395330 (S.D. Ohio Dec. 17, 2020).

Plaintiff "specifically takes issue with" the ALJ's statement that Dr. Goewey's opinions are "vaguely phrased, which limited their usefulness in making this decision." [Doc. 21 at Page ID # 631 (quoting Tr. 25)]. Plaintiff complains the ALJ "failed to elaborate on this finding or explain what limitations he found to be overly vague," which Plaintiff asserts is problematic because Dr. Goewey's sitting/walking/standing restrictions "could not be clearer" [Doc. 21 at Page ID # 631]. Perhaps Dr. Goewey did clearly articulate Plaintiff's sitting/walking/standing limitations. But Plaintiff does not argue that Dr. Goewey's limitation for "Limited food control activities" or his notation of "Recommend additional supportive documentation" is clear (Tr. 506), nor does Plaintiff point to any other assessed limitations in Dr. Goewey's opinion.

Thus, the Court finds Plaintiff has not shown the ALJ failed to adequately explain his decision not to fully adopt the limitations sitting/standing/walking restrictions assessed by Dr. Goewey when crafting Plaintiff's RFC. *Cf. Dominguez v. Comm'r of Soc. Sec.*, No. 1:16 CV 2769, 2017 WL 5952877, at *11-12 (N.D. Ohio Nov. 15, 2017) (remanding where ALJ gave "significant weight" to consultative examiner's opinion but did not mention or address walking or lifting restrictions and assessed contrary RFC), *report and recommendation adopted*, 2018 WL 5891759 (N.D. Ohio Nov. 29, 2017). "No bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding, but the administrative law judge must make a connection between the evidence relied on and the conclusion reached." *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019). As

12

the foregoing demonstrates, the ALJ has done so in this case. The ALJ adequately complied with SSR 96-8p and other applicable standards, and Plaintiff's request for relief will be denied in this regard.

The parties dispute whether Plaintiff waived argument concerning the ALJ's consideration of Dr. Goewey's opinion under the regulatory factors [*see* Doc. 20 at Page ID # 624 (Commissioner argues, "Plaintiff does not specifically challenge the ALJ's evaluation of Dr. Goewey's opinion under the regulatory factors[.]"); Doc. 21 at Page ID # 631 (Plaintiff replies she "also argued that the ALJ failed to properly evaluate Dr. Goewey's opinion under the regulatory factors.")]. As set forth below, the Court finds Plaintiff has not shown any harmful error in the ALJ's consideration of the regulatory factors or Dr. Goewey's opinion generally. As such it is unnecessary to decide whether Plaintiff waived any argument in this regard.

Regarding supportability, the ALJ noted Dr. Goewey's opinion was "partially persuasive" because it was "supported by a detailed examination of the claimant." (Tr. 25). Regarding consistency, the ALJ noted Dr. Goewey's opinion was "generally consistent" with the opinion from the DDS consultant on reconsideration, and inconsistent with the overly permissive opinion from the DDS consultant on initial consideration (Tr. 24-25). The ALJ's observation that Plaintiff's medical records did not reflect the degree of limitation she alleged also speaks to the consistency of Dr. Goewey's opinion with the record, as does the ALJ's acknowledgement of Plaintiff's neuropathy diagnosis (Tr. 20; 562). *See* 20 C.F.R. § 416.920c(c) (defining supportability and consistency).

The ALJ also acknowledged Dr. Goewey performed a one-time consultative examination in connection with Plaintiff's SSI application, and therefore he did not have a long-term treating relationship, but he did more than review medical records (Tr. 18). The ALJ further acknowledged

13

the initial DDS consultant had access to a less complete medical record than did Dr. Goewey or Dr. Thrush (Tr. 25). *See* 20 C.F.R. § 416.920c(c)(3), (5).

Plaintiff does not to any evidence in the record that bears on supportability, consistency, or any other factor that the ALJ did not address. Plaintiff may disagree with the ALJ's findings regarding the persuasiveness of Dr. Goewey's opinion, but she does not cite to authority or proof in the record that would require the Court to remand Plaintiff's claim for an award of benefits or further administrative proceedings on this basis. The ALJ's decision demonstrates the ALJ adequately considered the relevant factors, including supportability and consistency, in evaluating Dr. Goewey's opinion in the context of the record as a whole.

### C.     The ALJ's Consideration of Plaintiff's Treatment

Plaintiff also argues the ALJ "erred in failing to properly consider [her] difficulties in affording and obtaining treatment for her conditions," and further erred by "discrediting her for her lack of treatment while misrepresenting the evidence regarding her treatment." [Doc. 16 at Page ID # 608].

The ALJ addressed Plaintiff's subjective alleged symptoms near the beginning of his RFC analysis. He found Plaintiff's impairments could reasonably be expected to cause the symptoms she alleged, but that her allegations concerning the intensity, persistence, and limiting effects of the symptoms were "not entirely consistent with the medical evidence and other evidence in the record because the record simply does not support the full range of functional limitations asserted." (Tr. 24). The ALJ then elaborated:

> For example, the claimant testified she cannot sit, stand, or walk for more than five to fifteen minutes at one time, but her medical records contain no mention of such complaints. She asserted reduced hand strength and some shaking in her hands, but she specifically denied tremors and weakness at her initial visit to St. Mary's Legacy Clinic

14

(e.g., Exhibit 9F, page 20). She testified that her primary care physician has deferred treatment of diabetic neuropathy until the claimant['s] blood glucose is better controlled, yet her medical records do not reflect that decision and medications for less troublesome symptoms have been prescribed, which does not tend to support the asserted severity of her neuropathy. Further, many of the claimant's reported symptoms have improved since she returned to treatment in June 2021, and the only explanation[s] offered for her lack of treatment prior to that time were not having insurance, which I did not find persuasive because that situation is still present and she is now receiving care, and lack of transportation, which does not account for the availability of ride share services and more traditional conveyances such as taxis, let alone the likelihood that a friend or family member would have been willing to drive the claimant to her doctor visits, which appear to be at roughly quarterly intervals. Nonetheless, I have given the claimant much benefit of the doubt by finding her diabetes, diabetic neuropathy, hypertension, colitis, and obesity severe, despite her colitis only requiring treatment prior to the period at issue and her diabetes and hypertension significantly improving with the limited treatment provided.

(Tr. 24).

Plaintiff argues the records relied upon by the ALJ related to this issue "specifically document her difficulties with obtaining and affording treatment due to lack of resources, insurance, and the like. See, e.g., Tr. 532, 539, 543." [Doc. 16 at Page ID # 609]. Plaintiff also cites to Tr. 508 in support of this argument. The pages Plaintiff cites reflect:

St. Mary's note from June 17, 2021: "Carol Brown is a 33 year old female who presents as a new patient to our clinic. She had MH significant for HTN, DM, Hyperlipidemia and anxiety. She was previously seen at the Blount County Health Department but it got increasingly difficult to get there and she hasn't had care for over a year now. She lives in Monroe County. She has been off of all medications for about a year." (Tr. 543; *see also* Tr. 508).

St. Mary's note from August 27, 2021: "Will also refer patient to Ophthalmology due to concern for ophthalmologic damage from both severe HTN and uncontrolled DM. Patient has symptoms also consistent with IIH, but cannot afford Acetazolamide." (Tr. 539).

15

St. Mary's note from October 8, 2021: "She is awaiting KAPA referral for Optho but is missing paperwork and can't get bank information from her roommate (who has no financial connection with her)." (Tr. 532).

These pages reflect Plaintiff began having difficulties getting to the Blount County Health Department to receive care, she could not afford certain medication, and she struggled to get necessary information from her roommate to see an eye specialist. They do not address why Plaintiff did not seek help from St. Mary's sooner, nor do they address any efforts Plaintiff made during the undisputed year-long gap in treatment or what other low-cost treatment options were available for uninsured individuals. They do not address how Plaintiff previously made it to the Blount County Health Department. And, although Plaintiff could not afford a particular medication, it appears her providers at St. Mary's identified alternative medications. The ALJ was aware Plaintiff lacked health insurance and did not drive, as he explicitly mentioned both in the written decision (Tr. 20). The ALJ found, however, these reasons did not fully explain Plaintiff's lack of treatment during the relevant period, especially considering that at the time of the hearing and the written decision, Plaintiff continued to not have insurance or drive. The ALJ acknowledged Plaintiff's roommate "changed shifts" so that she could drive Plaintiff to her appointments (Tr. 20). The ALJ's reasoning is sound, and Plaintiff has not shown the ALJ overlooked or mischaracterized the record as it pertains to the gap in Plaintiff's treatment.

Furthermore, as the Commissioner points out, such gaps in treatment are appropriate considerations when the ALJ is assessing a claimant's subjective descriptions of her symptoms. *See also Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's

16

assertions of disabling pain." (citations omitted)); *see also Moore v. Comm'r of Soc. Sec.*, No. 14-1123-T, 2015 WL 1931425, at *3 (W.D. Tenn. Apr. 28, 2015) (finding no error with ALJ's consideration of claimant's lack of treatment as an adverse credibility factor (citations omitted)); SSR 16-3p, 2017 WL 5180304, at *9-10 (Oct. 15, 2017) ("individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed" potentially relevant factor to consider).

Relatedly, Plaintiff takes umbrage with the ALJ's observation that Plaintiff's medical visits "appear to be at roughly quarterly intervals" and that Plaintiff did not account for "the availability of ride share services and more traditional conveyances such as taxis" (Tr. 24). Plaintiff emphasizes she had in-person appointments approximately every two months rather than quarterly, and that she could not afford expensive ride-share or taxi services to get to her medical appointments. As for the difference between an appointment every three months versus every two months, this is hardly the type of error that justifies remand. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (Where "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game." (quoting *NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n.6 (plurality opinion))). It is clear the ALJ was referring to Plaintiff's in-person appointments, as her telehealth appointments did not require transportation, and the ALJ's point was simply that Plaintiff did not require daily, weekly, or even monthly rides, which might be a more onerous burden for a friend or family member to shoulder. The record reflects Plaintiff's roommate worked during the day during the gap in Plaintiff's treatment, but Plaintiff does not cite to any other proof of efforts she made to secure free or low-cost transportation to her appointments. Plaintiff complains the ALJ did not inquire during the hearing about other transportation options or whether Plaintiff could afford ride-share services, but

17

the Court sees no harmful error in this regard, considering the foregoing and the fact that Plaintiff was represented at the hearing, yet little testimony was offered relevant to this issue (Tr. 52-53).

Plaintiff also challenges the ALJ's finding that "many of the claimant's reported symptoms have improved since she returned to treatment in June 2021." (Tr. 24). Plaintiff argues the "evidence and treatment notes extensively document her poorly controlled diabetes, as well as her complaints and reports of fatigue, pain and numbness in the hands and feet." [Doc. 16 at Page ID # 612]. Plaintiff emphasizes her "hemoglobin A1c was 11% in June 2021," when she started treatment at St. Mary's, and "it was even higher at 11.2% in August 2021 after beginning treatment." [*Id.* (citing Tr. 523, 534, 547)]. She complains that treatment did not improve her obesity, and further her medications were "had continually been adjusted every visit since she started treating through St. Mary's in 2021," and she continued to experience and report "worsening burning in her legs and feet, blurred vision, numbness in her feet, and paresthesias, among other things." [Doc. 16 at Page ID # 612-13].

Despite Plaintiff's argument, she testified during the hearing that her "sugars have gone down" and "are improving." (Tr. 49). Hemoglobin A1C testing appears to measure a person's average blood sugar levels over a longer-term period, such that it stands to reason Plaintiff's A1C levels might remain elevated for a longer period of time than her blood sugar levels. *See Smith v. Jenkins*, 609 F. App'x 285, 293-94 (6th Cir. 2015) (describing the "A1C level" as a "a metabolic measurement showing [a person's] blood-sugar levels for the previous two-to-three months").

In addition, the ALJ did not find *all* of Plaintiff's symptoms were completely resolved after six months of treatment at St. Mary's. Rather, the ALJ found "many of the claimant's reported symptoms have improved since she returned to treatment in June 2021." (Tr. 24). Earlier in the decision, the ALJ noted Plaintiff's headaches, urinary frequency, and nausea, vomiting, and

18

depression have improved since she began treatment and as her medications have been adjusted (Tr. 20). This is consistent with Plaintiff's testimony (Tr. 50-51). The ALJ's finding that Plaintiff's symptoms have improved with treatment is supported by substantial evidence.

Plaintiff protests that "her other symptoms and limitations that were persistent despite her ongoing treatment during the period under review were the disabling factors in this claim." [Doc. 16 at Page ID # 613]. Presumably Plaintiff refers to the pain, swelling, and burning sensations she experiences. On this point, the ALJ specifically noted: "She testified that her primary care physician has deferred treatment until the claimant['s] blood glucose is better controlled, yet her medical records do not reflect that decision and medications for less troublesome symptoms have been prescribed, which does not tend to support the asserted severity of her neuropathy." (Tr. 24). The ALJ also explicitly acknowledged Plaintiff's complaints of "widespread pain; diabetic neuropathy in her legs, feet, hands, and arms causing constant pain with numbness and tingling; severely reduced ability to sit, stand, walk, lift, and carry; reduced strength and dexterity in her hands" (Tr. 24). But the ALJ noted Plaintiff "denied tremors and weakness at her initial visit to St. Mary's Legacy Clinic," and that Plaintiff's medical records "contain no mention" of such severe limitations in sitting, standing, and walking (Tr. 24). Furthermore, records from 2019 suggest that continued improvement in her blood sugar levels may "help to combat worsening neuropathy." (Tr. 480).

The record reflects Plaintiff did experience some difficulty obtaining specialized eye care, but the ALJ expressly limited Plaintiff to occupations requiring "only gross visual acuity" to accommodate the "blurred vision" attributed to Plaintiff's "diabetes and/or hypertension," (Tr. 24).

In sum, the ALJ acknowledged Plaintiff's testimony regarding her symptoms; discussed the medical record concerning those symptoms, including the improvements Plaintiff experienced

as well the lack of evidence to support Plaintiff's more severe allegations; addressed the gap in treatment, including the reasons why Plaintiff's explanations were not fully satisfactory; and ultimately assessed a restrictive RFC that adequately accommodates Plaintiff's limitations, including any exacerbating effects caused by her obesity. Though the ALJ may not have addressed each and every § 416.929 factor in detail, the Court finds the ALJ's analysis sufficient in this case.

For these reasons, the Court finds the ALJ properly considered Plaintiff's difficulties in receiving treatment and accurately described the improvements she experienced in treatment. More generally, the ALJ properly evaluated Plaintiff's reported symptoms and complaints in a manner consistent with relevant SSA policies and regulations, including SSR 16-3p and 20 C.F.R. § 416.929. Such evaluations are properly entrusted to the ALJ, *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007), and Plaintiff has failed to show any harmful error in this regard. *See Rottman v. Comm'r of Soc. Sec.*, 817 F. App'x 192, 194 (6th Cir. 2020) ("Given the deferential substantial-evidence standard, '[c]laimants challenging the ALJ's credibility findings face an uphill battle.'" (quoting *Nettleman v. Comm'r of Soc. Sec.*, 725 F. App'x 358, 360 (6th Cir. 2018))).

### D.      The ALJ's Decision is Supported by Substantial Evidence

The record and the ALJ's decision indicate the ALJ properly evaluated Plaintiff's alleged symptoms, weighed the opinion evidence, and considered all the evidence in the record to arrive at a well-reasoned RFC. The ALJ also properly relied on the testimony of the VE at step four. In short, the written decision reflects a "logical bridge between the evidence and the conclusion that the claimant is not disabled." *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260, at *3 (E.D. Tenn. July 19, 2010) (citation omitted). Accordingly, the Court concludes the ALJ's decision is supported by substantial evidence.

Because the ALJ had "the enormous task of making sense of the record, reconciling conflicting medical opinions and evidence, and weighing the credibility of [Plaintiff's] subjective complaints," *Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001), this Court's review is limited to whether the ALJ relied on evidence that "a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Comm'r of Soc. Sec.*, No. 21-1384, 2022 WL 740692, at *2 (6th Cir. Jan. 4, 2022) (quoting *Biestek*, 139 S. Ct. at 1154). In assessing Plaintiff's RFC, the ALJ explained the evidence that supported his conclusion and why he considered certain evidence less persuasive, and the Court finds the ALJ's findings and conclusions are adequately supported. *See Schmiedebusch*, 536 F. App'x at 646 ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion . . . ." (citation omitted)).

## V.    CONCLUSION

Accordingly, it is **ORDERED** that:

(1) Plaintiff's request for relief [Doc. 15 & Doc. 16] is **DENIED**; and

(2) the Commissioner's request that his final decision denying benefits be affirmed [Doc. 20] is **GRANTED**.

SO ORDERED.

ENTER:

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

21